IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TIMOTHY L. GASTILE,

        Plaintiff,                                    No. 2:11-cv-02829 JAM EFB P

    vs.

T. VIRGA, et al.,

        Defendants.                    FINDINGS AND RECOMMENDATIONS

_____/

       Plaintiff is a state prisoner proceeding without counsel in a civil rights action brought under 42 U.S.C. § 1983. Defendants Fong, Mills, Scruggs, and Virga move to dismiss. Dckt. No. 19. Defendants Day and Washington are not parties to the motion. For the reasons explained below, the motion should be granted in part and denied in part.

**I.    The Complaint**

       Plaintiff's verified complaint, filed on October 26, 2011, alleges that defendant Virga, while warden of California State Prison, Sacramento ("CSP-Sac"), "implemented, maintained, and/or enforced a policy" of permanently placing two prisoners in cells designed to house only one person. Dckt. No. 1 at 2-3. Plaintiff alleges that this "double-celling" makes it impossible for prison staff to "maintain visual security and/or prevent in cell violences [sic]." *Id.* at 3-4 n.1.

////

1

Pursuant to that policy, plaintiff was celled with an inmate named Joseph. *Id.* at 3. Plaintiff claims that Joseph made a knife-like weapon that he used to sexually threaten plaintiff and take his property. *Id.* In February 2011, plaintiff told defendant Scruggs that Joseph was threatening him with a weapon and requested a cell move. *Id.* Prison staff conducted a search of the cell and found the weapon in Joseph's area of the cell. *Id.* After the search, defendant Haring interviewed plaintiff. *Id.* Plaintiff allegedly told defendant Haring that Joseph had been sexually threatening him and taking his property. *Id.* Nevertheless, Haring placed plaintiff back in the cell with Joseph. *Id.* at 3-4.

On March 8, 2011, plaintiff told defendants Mills, Washington, Day, and Fong that Joseph had made another weapon and that plaintiff still feared for his life and safety. *Id.* at 4. Although the cell was searched again, staff did not locate the new weapon. *Id.* Plaintiff was placed back in the cell with Joseph. *Id.* Several hours later, Joseph attacked plaintiff from behind. *Id.* Joseph struck plaintiff on the head, ear, and face, causing plaintiff to fall to the ground. *Id.* Joseph tried to rape plaintiff, prompting plaintiff to fight back and "nutralize[] [sic] the situation." *Id.* Plaintiff claims that staff could not see or prevent the attack because of poor visibility into the cells. *Id.*

Documents attached to the complaint reveal that plaintiff was found guilty of a Rules Violation for "Battery on an Inmate with a Weapon" as a result of the altercation. *Id.* at 19-20. In the Rules Violation Report ("RVR"), reporting employee B. Hampton relayed that he had discovered Joseph in his cell with both eyes completely swollen shut on March 10, 2011. *Id.* On further examination, numerous wounds were discovered on Joseph's body, mostly on his head and face. *Id.*; *see also id.* at 12-14 (documentation and photographs of Joseph's injuries). Evidence adduced at the hearing indicated that plaintiff had beaten Joseph with a plastic cup. *Id.* at 20, 22. Plaintiff pleaded guilty to the charge, saying, "I'm guilty for fighting. I didn't know I was going to get attacked. I tried to get a bed move. I tried to get the Officers to go get his razor. He also had a sharpened bull-clip. We had been arguing. We fought. The bottom line is

I wouldn't let him take me." *Id.* at 19. Plaintiff was assessed 360 days credit forfeiture for the offense.

## II.     Rule 12(b)(6) Standard

In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55, 562-63, 570 (2007)  (stating that the 12(b)(6) standard that dismissal is warranted if plaintiff can prove no set of facts in support of his claims that would entitle him to relief "has been questioned, criticized, and explained away long enough," and that having "earned its retirement," it "is best forgotten as an incomplete, negative gloss on an accepted pleading standard").  Thus, the grounds must amount to "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action. *Id.* at 1965.  Instead, the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted).  Dismissal may be based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

The complaint's factual allegations are accepted as true. *Church of Scientology of Cal. v. Flynn*, 744 F.2d 694, 696 (9th Cir. 1984).  The court construes the pleading in the light most favorable to plaintiff and resolves all doubts in plaintiff's favor. Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  General allegations are presumed to include specific facts necessary to support the claim. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

The court may disregard allegations contradicted by the complaint's attached exhibits. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir.1998).  Furthermore, the court is not required to accept as true allegations contradicted by judicially noticed facts. *Sprewell v. Golden State Warriors*, 266

3

F.3d 979, 988 (9th Cir. 2001) (citing *Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987)).  The court may consider matters of public record, including pleadings, orders, and other papers filed with the court.  *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir. 1986) (abrogated on other grounds by *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)).  "[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  Neither need the court accept unreasonable inferences, or unwarranted deductions of fact.  *Sprewell*, 266 F.3d at 988.

Pro se pleadings are held to a less stringent standard than those drafted by lawyers.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  Unless it is clear that no amendment can cure its defects, a pro se litigant is entitled to notice and an opportunity to amend the complaint before dismissal.  *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

**III.   Analysis**

Defendants advance four arguments in support of dismissal: (1) plaintiff's complaint is barred by *Heck v. Humphrey*, 512 U.S. 477, 487 (1994) because plaintiff has not demonstrated that his disciplinary conviction for battery on Joseph has been invalidated; (2) plaintiff did not administratively exhaust his claims against defendants; (3) plaintiff's allegations do not state an Eighth Amendment claim against defendant Virga; and (4) plaintiff's claim for damages against defendant Virga is barred by the Eleventh Amendment.  Each argument will be addressed in turn.

    **A.    *Heck* Bar**

Defendants argue that plaintiff's suit is barred by *Heck v. Humphrey* and *Edwards v. Balisok*, 520 U.S. 641 (1997), because his claims conflict with the disciplinary finding which included a revocation of time credits.  Plaintiff counters that his case concerns defendants' alleged failure to protect him from Joseph and not his allegedly defensive assault on Joseph.

Thus, plaintiff implicitly argues, his success in this case would not necessarily undermine the RVR such that his forfeited time credits would have to be restored and accordingly *Heck* and *Balisok* do not bar his suit. For the reasons that follow, the argument has merit.

*Heck* is one in a line of cases generally regarded as beginning with *Preiser v. Rodriguez*, 411 U.S. 475 (1973), in which the U.S. Supreme Court determined that state prisoners seeking an injunction restoring good-time credits revoked in disciplinary proceedings must proceed under the federal habeas corpus statute (28 U.S.C. § 2254) rather than via § 1983. The court noted the historic role of the writ of habeas corpus as the vehicle for a confined individual to attack the legality of her custody and obtain release and concluded that, because the habeas statute dealt specifically with such a situation, it must be utilized rather than the more general § 1983 where a prisoner attacks (1) the fact of confinement or (2) the duration of confinement. *Id.* at 484-500.

In *Heck*, the Court further clarified what suits may not be brought under § 1983 but must instead be pursued via a petition for writ of habeas corpus. 512 U.S. 477 (1994). There, the court held that a state prisoner may not bring a damages claim under § 1983 attacking the constitutionality of his criminal conviction unless and until the underlying conviction is invalidated via habeas corpus or similar proceeding, because success in the § 1983 damages action would necessarily establish the invalidity of the conviction and attendant confinement. *Id.* at 478, 486-87. The Court emphasized that this rule, sometimes referred to as the "favorable termination rule," applies only where success in the civil rights suit would necessarily imply that the conviction or sentence were invalid. *Id.* at 486-87 and n. 6-7.

The Court took up the interplay between federal civil rights actions and writs of habeas corpus again in *Edwards v. Balisok*, 520 U.S. 641 (1997). In that case, the Court clarified that the favorable termination rule applies to a state inmate who challenges a disciplinary action for which he was assessed a credit loss, even where the inmate seeks no injunction restoring the

////

5

lost credits, if success in a civil rights action would necessarily imply that the credits should not have been revoked. *Id.* at 643-44, 646-47.

Conversely, in *Muhammad v. Close*, 544 U.S. 749 (2004), an inmate could challenge his pre-disciplinary-hearing detention under § 1983 without first invalidating the discipline imposed, because success in the action would not show his underlying criminal conviction to be invalid nor shorten the duration of his sentence by requiring the restoration of revoked credits. The Court clarified that *Heck*'s favorable termination rule does not apply categorically to all suits challenging prison disciplinary proceedings. *Id.* at 754. Prison disciplinary proceedings do not implicate the validity of the "fact of confinement" (*see Preiser*, 411 U.S. at 500) because "these administrative determinations do not as such raise any implication about the validity of the underlying conviction[.]" *Muhammad*, 544 U.S. at 754. Such proceedings *may* implicate the "duration of confinement" (*see Preiser*, 411 U.S. at 500), if credits were revoked. *Muhammad*, 544 U.S. at 754. Because the plaintiff in *Muhammad* lost no credits as a result of the discipline imposed, and because prison disciplinary hearings by their nature do not address the underlying conviction, the plaintiff's § 1983 action could not be "construed as seeking a judgment at odds with his conviction or with the State's calculation of time to be served in accordance with the underlying sentence." *Id.* at 754-55.

In *Wilkinson v. Dotson*, 544 U.S. 74 (2005), the Court surveyed the line of cases beginning with *Preiser* in determining that inmates challenging state parole procedures could proceed under § 1983. While the prisoners' ultimate goal was arguably to obtain speedier release under more favorable parole procedures, their success in obtaining such procedures in their § 1983 suit would not *necessarily* mean speedier release – parole was not guaranteed under the different procedures. *Id.* at 82. The Court emphasized that the favorable termination rule is limited to situations in which success in the § 1983 action would *necessarily* invalidate confinement or its duration. *Id.* at 81-82; *see also Nelson v. Campbell*, 541 U.S. 637, 647 (2004) (noting that the Court has "stress[ed] the importance of the term 'necessarily.'").

6

The Court reiterated the availability of § 1983 where success in the suit would not necessarily invalidate the prisoner's underlying conviction nor shorten his sentence in *Skinner v. Switzer*, ___ U.S. ___, 131 S. Ct. 1289, 1298-99 (2011). There, it held that a state prisoner seeking DNA testing of crime-scene evidence could assert his claim under § 1983, even though his ultimate aim was to use the evidence to support a claim of innocence. *Id.* at 1293. Success in the § 1983 suit would only provide the inmate with access to the DNA evidence, which could prove to be inculpatory, exculpatory, or neither. *Id.* The Court noted that none of its cases "has recognized habeas as the sole remedy, or even an available one, where the relief sought would neither terminate custody, accelerate the future date of release from custody, nor reduce the level of custody." *Id.* at 1299 (citing *Wilkinson*, 544 U.S. at 86, Scalia, J., concurring, internal quotation marks omitted) & 1299 n.13.

Returning to the facts of this case, the disciplinary finding does not affect the validity of plaintiff's underlying criminal conviction and thus does not implicate the "fact of confinement." *Muhammad*, 544 U.S. at 754. Nor does this case implicate the "duration of confinement," because plaintiff's success in this case would not necessarily invalidate the disciplinary finding and attendant time credit forfeiture. Plaintiff was found guilty of assaulting Joseph with a weapon. He does not contend here, and did not contend in his disciplinary hearing, that he did not assault Joseph. Instead, plaintiff admits to the assault. But he alleges that the defendants failed to protect him from Joseph put him in the position where fighting was likely to occur. It is the alleged placement of plaintiff in, or the refusal to remove him from, conditions of confinement where he was likely to be assaulted that form the basis of his claim. That these alleged conditions may have ultimately led him to fight back (presumably in violation of prison rules) does not alter the gravamen of his failure to protect claim.

Thus, plaintiff's allegations are not inconsistent with the disciplinary ruling against him.

////

////

7

If plaintiff were to convince the fact-finder that his allegations are true and obtain a verdict in his favor, that verdict would not imply that plaintiff's rules violation conviction for assault is invalid. Accordingly, *Heck* does not bar this suit.

**B.     Exhaustion**

       **1.     Standard**

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions [under section 1983 of this title] until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Prison conditions" subject to the exhaustion requirement have been defined broadly as "the effects of actions by government officials on the lives of persons confined in prison . . . ." 18 U.S.C. § 3626(g)(2); *Smith v. Zachary*, 255 F.3d 446, 449 (7th Cir. 2001); *see also Lawrence v. Goord*, 304 F.3d 198, 200 (2d Cir. 2002). To satisfy the exhaustion requirement, a grievance must alert prison officials to the claims the plaintiff has included in the complaint, but need only provide the level of detail required by the grievance system itself. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) (purpose of exhaustion requirement is to give officials "time and opportunity to address complaints internally before allowing the initiation of a federal case").

     Prisoners who file grievances must use a form provided by the California Department of Corrections and Rehabilitation, which instructs the inmate to describe the problem and outline the action requested. The applicable regulations have required, since January 28, 2011, that the inmate "list all staff member(s) involved" and "describe their involvement[.]" Cal. Code Regs. tit. 15, § 3084.2(a)(3) (2011). The grievance process has three levels of review to address an inmate's claims, subject to certain exceptions. *See* Cal. Code Regs. tit. 15, § 3084.7. Administrative procedures generally are exhausted once a plaintiff has received a "Director's Level Decision," or third level review, with respect to his issues or claims. *Id.* § 3084.1(b).

////

1  Proper exhaustion of available remedies is mandatory, *Booth v. Churner*, 532 U.S. 731,
2  741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other
3  critical procedural rules[.]" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). For a remedy to be
4  "available," there must be the "possibility of some relief . . . ." *Booth*, 532 U.S. at 738. Relying
5  on *Booth*, the Ninth Circuit has held:

> [A] prisoner need not press on to exhaust further levels of review once he has received all "available" remedies at an intermediate level of review or has been reliably informed by an administrator that no remedies are available.

*Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).

In the Ninth Circuit, motions to dismiss for failure to exhaust administrative remedies are normally brought under Rule 12(b). *See Albino v. Baca*, 697 F.3d 1023, 1029 (9th Cir. 2012). Nonetheless, it remains well established that credibility of witnesses over material factual disputes cannot be resolved on paper. Thus, when ruling on an exhaustion motion requires the court to look beyond the pleadings in the context of disputed issues of fact, the court must do so under "a procedure closely analogous to summary judgment." *Wyatt v. Terhune*, 315 F.3d 1108, 1119, n.14 (9th Cir. 2003). Doing so ensures that a process is followed to test whether disputes over facts pertaining to whether plaintiff actually exhausted available remedies are truly genuine and material and therefore warrant live testimony, or whether the dispute(s) may be disposed of by unrefuted declarations and exhibits. Therefore, following the suggestion in *Wyatt*, and because care must be taken not to resolve credibility on paper if it pertains to disputed issues of fact that are material to the outcome, the undersigned applies the Rule 56 standards to exhaustion motions that require consideration of materials extrinsic to the complaint.[1] *See Chatman v. Felker*, No. Civ. S-06-2912 LKK EFB, 2010 WL 3431806, at *2-3 (E.D. Cal. Aug. 31, 2010).

////

---

[1] Here, defendants rely on testimonial evidence in the form of declarations from two prison officials and a documentary record to establish the facts in support of their contention that plaintiff failed to exhaust.

Failure to exhaust is an affirmative defense in the sense that defendants bear the burden of proving plaintiff did not exhaust available remedies. *Wyatt*, 315 F.3d at 1119. To bear this burden:

> a defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process. Relevant evidence in so demonstrating would include statutes, regulations, and other official directives that explain the scope of the administrative review process; documentary or testimonial evidence from prison officials who administer the review process; and information provided to the prisoner concerning the operation of the grievance procedure in this case . . . . With regard to the latter category of evidence, information provided [to] the prisoner is pertinent because it informs our determination of whether relief was, as a practical matter, "available."

*Brown*, 422 F.3d at 936-37 (citations omitted).

Defendants' motion to dismiss included a notice to plaintiff informing him of the requirements for opposing a motion to dismiss for failure to exhaust available administrative remedies. *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Stratton v. Buck*, 697 F.3d 1004, 1008-10 (9th Cir. 2012); *Wyatt v. Terhune*, 315 F.3d 1108, 1115, 1120 n.15 (9th Cir. 2003).

### 2. Analysis

Defendants argue that plaintiff has not properly exhausted an inmate appeal challenging the double-celling policy or his housing with Joseph. Defendants' evidence shows that plaintiff filed only one appeal during 2011. Dckt. No. 19-2. That appeal was screened out at the first level of review for failing to demonstrate an adverse effect. *Id.*

Plaintiff responds that he did exhaust his claims but that, during the time he was placed in administrative segregation following the altercation with Joseph and then moved to a different prison, his legal documents were "mysteriously" misplaced. Plaintiff has submitted evidence of two relevant appeals. First, in an inmate appeal form dated March 12, 2009, plaintiff challenged the double-celling policy. Dckt. No. 22 at 4. That form contains entries in the "Informal Level" portion of the document which indicate that the appeal was received on April 6, 2009 and that the appeal was "granted" at the informal level of review with the comment, "Your concerns are

10

duly noted." *Id.* Second, in an appeal form dated March 11, 2011, plaintiff challenged staff's failure to house him apart from Joseph. *Id.* at 6. That appeal was rejected at the first level of review on October 14, 2011 for failure to demonstrate a material adverse effect on plaintiff's welfare. *Id.* at 5-6. Plaintiff has not submitted any evidence indicating that he continued to pursue this appeal after it was initially screened out and exhausted it before filing this action on October 26, 2011.

Plaintiff's evidence thus indicates that he filed an appeal regarding defendant Virga's alleged double-celling policy in 2009 which was "granted" at the informal level of review. Defendants have not responded to this evidence. Because the evidence indicates that this appeal was granted at the informal level, plaintiff was not obligated to pursue further levels of review in order to exhaust it. *Harvey v. Jordan*, 605 F.3d 681, 685 (9th Cir. 2010) ("An inmate has no obligation to appeal from a grant of relief . . . in order to exhaust his administrative remedies."). Accordingly, on the evidence before the court, defendants have failed to demonstrate that plaintiff did not exhaust his claim against defendant Virga for enforcing the double-celling policy.

The 2009 appeal pre-dated plaintiff's requests that staff remove him from the cell he shared with Joseph and his altercation with Joseph, however. Thus, it cannot serve to exhaust plaintiff's claims against defendants Fong, Mills, and Scruggs. Defendants have submitted evidence that plaintiff's 2011 appeal regarding his housing with Joseph was screened out at the first level of review and plaintiff did not pursue the appeal further. Plaintiff has not rebutted that evidence. In fact, the appeal was screened out only 12 days before this suit was filed, making it exceedingly improbable that plaintiff would be able to re-submit the appeal and see it through to the third level of review before filing. Accordingly, plaintiff's claims against defendants Fong, Mills, and Scruggs must be dismissed without prejudice for failure to exhaust.

////

////

### C.     Plaintiff's Claim Against Defendant Virga

Defendant Virga argues that plaintiff's claim against him for enforcing the double-celling policy should be dismissed for failure to state a claim because "the prison policy of double celling inmates is not per se unconstitutional." Dckt. No. 19 at 9 (citing *Bell v. Wolfish*, 441 U.S. 520, 541 (1979); *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 388 (1992); and *Ford v. Ramirez-Palmer (Estate of Ford)*, 301 F.3d 1043, 1051 (9th Cir. 2002)). Defendant Virga argues that plaintiff's allegations are simply a legal conclusion – that the policy is unconstitutional.

The cases cited by defendants merely instruct that double-celling inmates does not violate the Constitution in all cases. *Rufo*, 502 U.S. at 388. Plaintiff's allegations are not so sparse as to claim solely and conclusorily that the double-celling policy is per se unconstitutional, however. Rather, plaintiff alleges that the double-celling that occurred at CSP-Sac at the relevant time were unconstitutional because it compromised sanitation (because there were inadequate toileting facilities) and safety (because staff could not see well into the cells). Dckt. No. 1 at 3-4 n.1. Plaintiff additionally alleges that the double-celling at CSP-Sac caused prison overcrowding "that not only overwhelm[ed] medical and mental health care, but . . . created a lethal survival of the fittest, gladiator type, prison environment resulting in the murder, rape, assault, and/or battery of innumerable prisoners throughout CDCR inclusive of plaintiff." *Id.* at 3. Accordingly, defendant Virga has failed to show that plaintiff's allegations with regard to the double-celling policy are insufficient to state a claim.

### D.     The Eleventh Amendment

Defendant Virga also argues that plaintiff's claim for damages against him is barred by the Eleventh Amendment and by the fact that, as a state official sued in his official capacity, he is not a "person" amenable to suit under § 1983.

The 11th Amendment bars § 1983 suits against a State unless the state has waived its sovereign immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). A suit against a state official in his or her official capacity is treated as a suit against the State and is barred by

12

the 11th Amendment. *Id.* at 71. Similarly, a state official sued in his or her official capacity, being treated as equivalent to the State, is not considered a "person" who may be sued under § 1983. However, suits against state officials in their official capacities seeking injunctive relief are not treated as against the State and thus are not barred. *Id.* at 71 n.10.

On the other hand, "[c]learly, under § 1983, a plaintiff may sue a state officer in his *individual* capacity for alleged wrongs committed by the officer in his official capacity." *Price v. Akaka*, 928 F.2d 824, 828-29 (9th Cir. 1990) (emphasis added). Thus, to determine whether a § 1983 suit for damages against a state official is barred by the 11th Amendment and not cognizable under § 1983, a court must determine whether the plaintiff has sued the official in his or her official or individual capacity. In making that determination, the court looks to the basis of the claims asserted and the nature of relief sought, and not just the label applied by plaintiff. *Id.*; *see also Shoshone-Bannock Tribes v. Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994). A plaintiff's claim for damages against a defendant indicates that the defendant has been sued in his or her individual capacity. *Price*, 928 F.2d at 828.

Plaintiff's complaint states that all defendants, including defendant Virga, are sued in their individual and official capacities. Dckt. No. 13 at 2-3. However, the complaint seeks damages against defendant Virga. *Id.* at 7. This fact indicates that defendant Virga is sued in his individual capacity. *Price*, 928 F.2d at 828. Because neither the 11th Amendment nor the language of § 1983 bar plaintiff's suit for damages against defendant Virga in his individual capacity, the court must reject defendant Virga's request that plaintiff's damages claim against him be dismissed.

### E.     Summary

If the district court adopts the recommendations herein, plaintiff's claims against defendants Fong, Mills, and Scruggs will be dismissed without prejudice for failure to exhaust.

////

////

Plaintiff's claim against defendant Virga for implementing, maintaining, and/or enforcing the double-celling policy will remain. (As noted above, defendants Day and Washington are not parties to this motion, and plaintiff's claims against them also remain.)

## IV. Recommendation

Accordingly, IT IS HEREBY RECOMMENDED that defendants' February 20, 2013 motion to dismiss (Dckt. No. 19) be granted in part – such that plaintiff's claims against defendants Fong, Mills, and Scruggs be dismissed without prejudice for failure to exhaust – and otherwise denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 11, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE